UNITED STATES, Appellee

v.

James H. FOERSTER, Staff Sergeant
United States Army, Appellant

No. 07-0093

Crim. App. No. 20040236

United States Court of Appeals for the Armed Forces

Argued May 1, 2007

Decided June 20, 2007

RYAN, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.


Counsel


For Appellant:  Captain Eugene Ham (argued); Lieutenant Colonel
Steven C. Henricks, Major Fansu Ku (on brief).

For Appellee:  Captain Magdalena A. Acevedo (argued); Lieutenant
Colonel Michele B. Shields (on brief).


Military Judge:  D. Wright

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his plea, of a single specification and charge of larceny (on divers occasions), in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921 (2000).  Contrary to his pleas, a panel of officers convicted Appellant of making a false official statement, larceny (nine specifications), and forgery (nine specifications), in violation of Articles 107, 121 and 123, UCMJ; 10 U.S.C. §§ 907, 921, 923.  The panel sentenced Appellant to twelve months of confinement, reduction to the grade of E-1, forfeiture of all pay and allowances, and a bad-conduct discharge.  The convening authority approved only so much of the sentence providing for a reduction in grade to E-1, confinement for twelve months, and a bad-conduct discharge.  The Army Court of Criminal Appeals affirmed the findings of guilt and the sentence as approved by the convening authority in a per curiam opinion.  United States v. Foerster, No. ARMY 20040236 (A. Ct. Crim. App. Sept. 19, 2006) (unpublished).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE, UNDER MIL. R. EVID. 803(6) AND 807, AND OVER DEFENSE OBJECTION, THE AFFIDAVIT OF SERGEANT J.P. WHO DID NOT APPEAR AT TRIAL IN CONTRAVENTION OF THE MIL. R. EVID. AND CRAWFORD V. WASHINGTON, 541 U.S. 36 (2004).

United States v. Foerster, No. 07-0093/AR

In this case, we are asked to determine whether an affidavit filled out by a victim of check fraud pursuant to internal bank procedures and without law enforcement involvement in the creation of the document is admissible as a non-testimonial business record in light of Crawford v. Washington, 541 U.S. 36 (2004) and Davis v. Washington, 126 S. Ct. 2266 (2006). We hold that the affidavit was nontestimonial and that the military judge did not abuse her discretion in admitting it as a business record under Military Rule of Evidence (M.R.E.) 803(6).[1]

## I. BACKGROUND

While deployed in Iraq, Sergeant (Sgt) Jason Porter reported to both his chain of command and to law enforcement that someone had forged a number of his checks and cashed them. Sgt Porter's checking account was with the Fort Sill National Bank (FSNB) in Fort Sill, Oklahoma. When Sgt Porter returned from deployment he went to FSNB in an attempt to recover the fraudulently withdrawn money. Pursuant to its own internal procedures, FSNB required Sgt Porter to fill out a form, entitled "AFFIDAVIT OF UNAUTHORIZED SIGNATURE (FORGERY AFFIDAVIT)" (forgery affidavit), in order to get his money back.

---

[1] The military judge ruled that the document was admissible as either a business record or under M.R.E. 807's residual exception. As we hold that the document was admissible as a business record, we need not address the residual exception.

Sgt Porter filled in and signed the forgery affidavit. FSNB, after researching and verifying the information, reimbursed his account. FSNB retained the forgery affidavit in its files.

By the time Appellant was brought to trial Sgt Porter was in Kuwait for redeployment to Iraq. Sgt Porter's commander declined to return him for trial, citing Sgt Porter's leadership role, and his need to be present for predeployment training and deployment.[2] Consequently, Government counsel made it known that they intended to admit the forgery affidavit at trial as a business record.

Defense counsel filed a motion in limine arguing that the forgery affidavit was inadmissible hearsay that failed to satisfy the requirements of any exception. In the alternative, defense counsel argued that the affidavit violated Appellant's rights under the Confrontation Clause of the Sixth Amendment.

The military judge held an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), session to determine the admissibility of the forgery affidavit. She heard testimony from an FNSB vice president regarding the bank's standard operating procedures in instances of check fraud. After considering the motions, examining the document, hearing the FSNB vice president's

---

[2] Based on our conclusion that the document at issue is nontestimonial, we do not address or assess the validity of the military judge's ruling that Sgt Porter was unavailable.

testimony, and listening to counsel's arguments, the military judge ruled that the affidavit was admissible as a business record. The military judge also concluded that "[s]ince a business record is a firmly rooted hearsay exception no further Confrontation Clause analysis is necessary." The military judge rendered this decision before the Supreme Court's decision in Crawford.

The military judge's written findings of fact show that FSNB required Sgt Porter to comply with specific internal bank procedures before it would reimburse him. Sgt Porter was required to personally appear at the bank, present valid identification, and sign a sworn affidavit. The military judge found that these procedures were in place to ensure that FSNB was not being defrauded by the account holder.

The military judge found that the forgery affidavit was a standard form used by FSNB when fraud occurred. The form had blank spaces for Sgt Porter's name, his checking account number, and the check number, amount, and payee listed on each of the forged checks. FSNB required Sgt Porter to sign the form five consecutive times for comparison with his signature card, which, per FSNB procedure, was kept on file. FSNB required Sgt Porter to swear that neither he nor an authorized signatory signed the listed checks or received any benefit from the checks. The

military judge noted that the form did not request information regarding who may have forged the checks.

The military judge found that FSNB's procedure required a senior bank official to verify the information in the forgery affidavit and compare the signatures before authorizing reimbursement, as a final step to prevent fraud. The forgery affidavit was then kept on file for seven years, in accordance with FSNB's standard procedures.

The forgery affidavit form contains a provision authorizing FSNB to turn the forgery affidavit over to law enforcement, among others. The provision further includes an agreement by the affiant to cooperate in any criminal or civil proceeding. When Army Criminal Investigation Division (CID) agents eventually requested the forgery affidavit signed by Sgt Porter from FSNB, FSNB complied.

The military judge concluded that FSNB was a regularly conducted business, that it was the regular practice of FSNB to have forgery affidavits completed in instances of check forgery, that FSNB followed standard operating procedures to verify the affidavit's accuracy before using it to reimburse Sgt Porter, and that FSNB adopted the affidavit by first verifying the contents and veracity of the affidavit and then reimbursing funds based on its verification. She ruled that the facts outlined above made the document a reliable business record.

## II. DISCUSSION

### A.    Confrontation Clause Analysis

Appellant argues that the forgery affidavit was "testimonial," and that its admission at trial violated his Sixth Amendment right to confrontation, in light of Crawford and Davis.[3]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him."  U.S. Const. amend. VI. In the context of out-of-court statements, this right applies to "testimonial statements."  Davis, 126 S. Ct. at 2273.  "Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."  Id.  Whether a document constitutes testimonial hearsay is a legal question we review de novo.  United States v. Rankin, 64 M.J. 348, 351 (C.A.A.F. 2007).  We accept the military judge's findings of fact "unless they are clearly erroneous or unsupported by the record."  United States v. Rader, 65 M.J. 30, 33 (C.A.A.F. 2007) (citation omitted).

---

[3]  Appellant was convicted two weeks before the Supreme Court decided Crawford.  In Whorton v. Bockting, the Supreme Court stated that "it is clear that Crawford announced a new rule." 127 S. Ct. 1173, 1181 (2007).  Because Crawford announced a "new rule" we apply it here.  See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (holding "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review").

The Supreme Court has expressly declined to set forth an all encompassing definition of "testimonial." Davis, 126 S. Ct. at 2273; Crawford, 541 U.S. at 68. As we previously recognized in Rankin, 64 M.J. at 351, United States v. Magyari, 63 M.J. 123, 126 (C.A.A.F. 2006), and United States v. Scheurer, 62 M.J. 100, 105-07 (C.A.A.F. 2005), we are not, however, without guidance. Crawford did state that "[w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. At the same time, Crawford recognized that the Sixth Amendment must be interpreted with a focus on the fact that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." Crawford, 541 U.S. at 50. The Confrontation Clause should not be read as a wholesale nullification of the hearsay exceptions outlined in the Military Rules of Evidence. See id. at 51 (stating "not all hearsay implicates the Sixth Amendment's core concerns").

Under the civil-law mode of criminal procedure, "[j]ustices of the peace or other officials examined suspects and witnesses before trial," and the "examinations were sometimes read in court in lieu of live testimony . . . ." Id. at 43. The Marian bail and committal statutes "required justices of the peace to

examine suspects and witnesses in felony cases and to certify the results to the court." Id. at 43-44. Today, in lieu of magistrates and justices of the peace, we have "examining police officers . . . who perform investigative and testimonial functions once performed by examining Marian magistrates." Davis, 126 S. Ct. at 2278 n.5.

Appellant argues that the forgery affidavit in this case is testimonial because it was made and elicited with an "eye towards prosecution." A possible definition of "testimonial" provided by the Court in Crawford focused on this circumstance: "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52.

After Davis' addition of the contextual "primary purpose" analysis to the testimonial/nontestimonial inquiry, this Court decided Rankin. In Rankin, we identified several factors "relevant in distinguishing between testimonial and nontestimonial hearsay made under circumstances that would cause an objective witness to reasonably believe that the statement would be available for use at a later trial." 64 M.J. at 352. Those factors include: (1) whether the statement was elicited by or made in response to law enforcement or prosecutorial inquiry; (2) whether the statement involved more than a routine

and objective cataloging of unambiguous factual matters; and, (3) whether the primary purpose for making, or eliciting, the statements was the production of evidence with an eye toward trial.  Id.

Appellant does not allege that the military judge's findings were clearly erroneous.  Furthermore, we note that they are supported by the record.  Looking to those findings, we address the factors outlined in Rankin.

First, the affidavit was made by Sgt Porter at the behest of FSNB, in compliance with its own standard procedures, without a request from, or the participation of, law enforcement or the prosecutor.  While the military judge recognized that Sgt Porter reported the crime months earlier, during his deployment to Iraq, his interaction with FSNB in creating the document was not requested or directed by any military or civilian criminal investigators.  And although the document was later turned over to law enforcement officials in response to a request from CID, it was not "elicited by or made in response to" a "prosecutorial inquiry."  Id.

Second, the document catalogs objective facts.  The forgery affidavit lists the check numbers, the amount of each check, the payee on each check, five examples of Sgt Porter's signature, and his representation that he did not cash or benefit from the

checks listed.  The document does not identify Appellant as the forger, but simply lists his name as payee on several checks.

The final question, whether the primary purpose of the document was prosecutorial in nature, necessitates a contextual analysis.  Rankin, 64 M.J. at 352.  Looking to the context in which the document was drafted, FSNB's primary purpose in eliciting the affidavit was, as the military judge found and the record supports, to ensure that it would not be defrauded by an account holder.  The record also demonstrates that Sgt Porter's primary purpose in filling out the affidavit was to be reimbursed for the missing funds.

The affidavit did contain language allowing the document to be turned over to law enforcement.  But that does not change the primary purposes for either eliciting or making the statement.  Nor is there authority to suggest that that fact, without more, transforms a nontestimonial business record into a testimonial statement.  Rankin, 64 M.J. at 352 n.4 (noting that even where it is anticipated that a statement could be used at a court-martial, "our analysis concerns the primary purpose for creating the document").

In our view this affidavit is akin to other formal documents that we and other courts have concluded are nontestimonial, such as military personnel records, urinalysis lab reports such as those described in Magyari, and deportation

11

warrants.  Rankin, 64 M.J. at 353; Magyari, 63 M.J. at 127;

United States v. Garcia, 452 F.3d 36, 41 (1st Cir. 2006).[4]  This

Court has recognized that the absence of evidence a document was

"generated for the purpose of producing 'evidence' at trial" is

important in determining whether it is nontestimonial.  Rankin,

64 M.J. at 353.  The military judge found that the document was

generated in order to prevent bank fraud.  We see nothing

clearly erroneous in her finding.

Appellant further contends, citing United States v.

Sandles, 469 F.3d 508 (6th Cir. 2006), that any affidavit,

regardless of its primary purpose, is testimonial.  Appellant

misapprehends the holding in Sandles.  There, the court focused

on the government involvement in creating the affidavit and

concluded "an affidavit of a Government employee" is testimonial

in nature.  Id. at 516.  There is a distinct difference between

Sandles, where a government employee made an affidavit in the

---

[4] See also United States v. Thornton, 209 F. App'x 297, 299 (4th Cir. 2006) (concluding "that the fingerprint cards were not 'testimonial,' and that the admission of such business or public records does not violate the rule in Crawford"); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005) (holding public records are not testimonial); United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (concluding that a "warrant of deportation is non-testimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter"), cert. denied, 126 S. Ct. 1652 (2006); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating that documents in an immigration file are similar to nontestimonial business records).

course of her government employment for use by the prosecution at trial, and the facts before us today, where the affiant is an individual filling in the blanks on a form in the course of a private financial transaction.  This factual difference, not any difference in the mode of analysis, leads to our different result.

We recognize that the Supreme Court refers, at different times, to "affidavits" as among those categories of out-of-court statements that could be considered within the "core class of 'testimonial statements.'"  Crawford, 541 U.S. at 51-52.  But we do not believe that the Court intended that every document labeled "affidavit" is, for that reason alone, a testimonial statement.  Rather, given the Court's focus on the abuses at which the Confrontation Clause was aimed, we believe that its references to affidavits that would be presumptively testimonial refer to ex parte affidavits developed:  (1) by law enforcement or government officials and (2) by private individuals acting in concert with or at the behest of law enforcement or government officials.  Other affidavits remain subject to a contextual analysis to determine whether they are, or are not, testimonial. We find illuminating, in this regard, the history of the right to confrontation as discussed in Crawford.  Id. at 50-53.

The "ex parte examinations" against which the Confrontation Clause was aimed, the fruits of which are presumptively

13

testimonial, implicate a level of government involvement entirely absent in either the eliciting or making of the forgery affidavit.[5]  Under a contextual analysis, given the facts of this case, the forgery affidavit was not testimonial, and the Confrontation Clause is not implicated by its admission in Appellant's trial.

## B. Business Record Hearsay Exception

A finding that the forgery affidavit is nontestimonial does not end the analysis in determining whether it was error to admit it.  It must also be admissible under the Military Rules of Evidence.  In this case the military judge determined that the forgery affidavit was admissible as a business record, under M.R.E. 803(6).  We review her ruling on this evidentiary matter for an abuse of discretion.  United States v. Datz, 61 M.J. 37, 42 (C.A.A.F. 2005).

---

[5] Hammon v. Indiana also involved an affidavit.  126 S. Ct. 2266, 2272 (2006).  In Hammon, all litigants agreed the affidavit was testimonial.  See id. at 2284 n.5 (Thomas, J., concurring in part and dissenting in part).  However, in contrast to the case at bar where no law enforcement was involved and the affidavit was drafted pursuant to internal bank procedures, the respondent in Hammon conceded that the victim's affidavit was made at the behest of a police officer and was "useful only for obtaining a criminal conviction."  Brief of Respondent at 46, Hammon, 126 S. Ct. 2266 (No. 05-5705).  The Solicitor General concurred in his brief, stating that "a government-solicited affidavit, almost by definition, is '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"  Brief for United States as Amicus Curiae Supporting Respondent at 14, Hammon, 126 S. Ct. 2266 (No. 05-5705) (emphasis added) (citations omitted).

Military Rule of Evidence 803(6) allows for the admission of business records that would otherwise be inadmissible hearsay as long as the holder of the record is a business and the record is "made at or near the time by, or from information transmitted by, a person with knowledge," is kept "in the course of a regularly conducted business," and it "was the regular practice of that business" to make such records. M.R.E. 803(6). There is no unavailability requirement under this rule. Id. Federal courts, in analyzing the analogous federal rule, have held that the business records exception should be "construed generously in favor of admissibility." Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 391 (Fed. Cir. 1996).

The question in this case is whether the forgery affidavit can be considered a business record, made in the regular course of FSNB's business, when it was filled out and signed by Sgt Porter, a third party.

In United States v. Grant, this Court stated that "a document prepared by a third party is properly admitted as part of a second business entity's records if the second business integrated the document into its records and relied upon it in the ordinary course of its business." 56 M.J. 410, 414 (C.A.A.F. 2002). We noted three requirements when a business adopts a record prepared by another: (1) the record must be procured by the second entity in the normal course of business;

15

(2) the second entity must show that it relied on the record; and (3) there must be "other circumstances indicating the trustworthiness of the document." Id.

In this case, a proper foundation for admission of the forgery affidavit as a business record was made by the FSNB vice president, and the military judge made specific findings of fact and conclusions of law with regard to each of the points outlined in Grant. As discussed in more detail in the background section, the military judge concluded that FSNB was a regularly conducted business, that it was the regular practice of FSNB to have forgery affidavits completed in instances of check forgery, that FSNB followed standard operating procedures to verify the affidavit's accuracy before using it to reimburse Sgt Porter, and that FSNB adopted the affidavit by first verifying the contents and veracity of the affidavit and then reimbursing funds based on its verification. The military judge also received testimony from the FSNB vice president regarding the specific procedures in place to ensure that the document was made under reliable circumstances. She found that the forgery affidavit in this case was developed pursuant to those procedures.

The forgery affidavit was elicited pursuant to standard FSNB procedures; therefore, it was procured in the normal course of business. See, e.g., United States v. Console, 13 F.3d 641,

656-57 (3d Cir. 1993) (holding internal accident reports were business records); United States v. Jacoby, 955 F.2d 1527, 1537 (11th Cir. 1992) (stating "repetitiveness with which a record is prepared is not the touchstone of admissibility under the business records exception").

The military judge also ruled that FSNB relied on the record and adopted it as its own by using it to determine whether to reimburse Sgt Porter. The federal courts have determined that the act of using a document and relying on its contents in the regular course of business is enough to satisfy the business record exception. See United States v. Childs, 5 F.3d 1328, 1333-34 (9th Cir. 1993) (holding vehicle invoice relied on by auto dealer admissible); United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (finding importation documents provided by wholesaler and relied on by retailer were admissible); United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984) (holding foreign customs certificate relied on by domestic import firm was admissible as a business record of the firm). We cannot say that the military judge erred in finding that FSNB relied on the forgery affidavit.

The military judge also concluded that the document bore sufficient indicia of trustworthiness. She noted that Sgt Porter was required to personally appear at FSNB and present identification before the document was signed. FSNB also

required that the forgery affidavit be made under oath.  These requirements, coupled with the comparison of the signatures on the documents to Sgt Porter's signature card, ensured that the document was reliable and trustworthy.  See Saks Int'l, Inc. v. M/V "Export Champion", 817 F.2d 1011, 1014 (2d Cir. 1987) (reasoning that regularly conducted spot checks of vessel's cargo loading ensured that loading documents were reliable business records).

Appellant alleges that the document was made in anticipation of litigation and could not be trustworthy.  While a document prepared in anticipation of litigation could present problems of trustworthiness, those problems do not exist in this case.  This forgery affidavit was drafted in the regular course of business with a primary purpose of preventing fraud; therefore, it was not drafted in anticipation of litigation. See United States v. Feliz, 467 F.3d 227, 234 (2d Cir. 2006) (reasoning business records "prepared in the ordinary course of regularly conducted business . . . are 'by their nature' not prepared for litigation.") (citation omitted).

The military judge made specific findings of fact and conclusions of law in accordance with M.R.E. 803(6) and our decision in Grant.  Her findings of fact were not clearly erroneous.  The military judge did not abuse her discretion in

admitting the forgery affidavit as a business record in this case.

## III.  Decision

The decision of the Army Court of Criminal Appeals is affirmed.