UNITED STATES, Appellee

v.

Robert B. CLAYTON, Sergeant
U.S. Army, Appellant

No. 08-0417

Crim. App. No. 20040903

United States Court of Appeals for the Armed Forces

Argued December 16, 2008

Decided March 26, 2009

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN and RYAN, JJ., joined. STUCKY, J., filed a
separate opinion concurring in part and in the result.


Counsel

For Appellant: Captain Jennifer A. Parker (argued); Lieutenant
Colonel Matthew M. Miller, Lieutenant Colonel Mark Tellitocci,
and Major Grace M. Gallagher (on brief); Colonel Christopher J.
O'Brien, Lieutenant Colonel Steven C. Henricks, Major Bradley M.
Voorhees, Major Sean F. Mangan, and Captain Kathleena R.
Scarpato.

For Appellee: Major Christopher R. Clements (argued); Colonel
Denise R. Lind, Lieutenant Colonel Mark H. Sydenham, and Major
Lisa L. Gumbs (on brief); Major Dana E. Leavitt.

Military Judge: R. L. Hall

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Clayton, No. 08-0417/AR

Judge BAKER delivered the opinion of the Court.

A general court-martial with members convicted Appellant, contrary to his pleas, of use of marijuana, possession of marijuana, two specifications of obstruction of justice, possession of marijuana with intent to distribute, reckless driving, assault on a law enforcement officer, and fleeing apprehension in violation of Articles 111, 112a, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 911, 912a, 928, 934 (2000). Appellant was sentenced to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to grade E-1. The convening authority approved the sentence as adjudged, as well as thirty-three days of confinement credit for time served and post-trial delay. The United States Army Court of Criminal Appeals affirmed the findings of guilty and the sentence. United States v. Clayton, No. ARMY 20040903 (A. Ct. Crim. App. Jan. 23, 2008) (per curiam).

We granted Appellant's petition for grant of review and specified two issues that relate to the admission of a German civilian police report.[1] We hold that the police report

---

[1] We specified review of the following issues:

    I. WHETHER THE CIVILIAN POLICE DRUG SEIZURE REPORT IN THIS CASE IS A REPORT SETTING FORTH "MATTERS OBSERVED BY POLICE OFFICERS . . . ACTING IN A LAW ENFORCEMENT CAPACITY," AND, IF SO, WHETHER IT WAS PROPERLY ADMITTED UNDER M.R.E. 803(6)

constitutes testimonial hearsay and the military judge committed constitutional error by admitting it as evidence at Appellant's court-martial.  We further hold that the error was not harmless beyond a reasonable doubt.[2]

BACKGROUND

Although only the specification under Charge IV of possession of marijuana with the intent to distribute is at issue in this appeal, several of Appellant's charges relate to the events of March 16, 2004, in Ansbach, Germany.[3]  On that day,

---

(BUSINESS RECORD EXCEPTION), WHEN IT WOULD NOT BE ADMISSIBLE UNDER M.R.E. 803(8) (PUBLIC RECORDS EXCEPTION). COMPARE, e.g., UNITED STATES v. OATES, 560 F.2d 45, 77-78 (2d Cir. 1977) (HOLDING THAT POLICE RECORDS THAT WOULD BE INADMISSIBLE UNDER THE PUBLIC RECORDS EXCEPTION AGAINST THE ACCUSED WOULD ALSO BE INADMISSIBLE UNDER ANY OTHER EXCEPTION TO THE HEARSAY RULE) WITH UNITED STATES v. HAYES, 861 F.2d 1225, 1230 (10th Cir. 1988) (HOLDING THAT THERE IS NO LIMITATION TO THE BUSINESS RECORD EXCEPTION IF THE AUTHOR OF THE PROFFERED DOCUMENT TESTIFIES AT TRIAL).

II.  IF THE MILITARY JUDGE ABUSED HER DISCRETION IN ADMITTING THE POLICE DRUG SEIZURE REPORT, WHETHER THE ERROR MATERIALLY PREJUDICED APPELLANT'S SUBSTANTIAL RIGHTS?

67 M.J. 42 (C.A.A.F. 2008).

[2] In light of our conclusion that the report was inadmissible testimonial hearsay, we need not reach the specified issues. This report would not qualify as either a business record or a public record.  See United States v. Rankin, 64 M.J. 348, 353 (C.A.A.F. 2007) (concluding that the documents were nontestimonial under Crawford v. Washington, 541 U.S. 36 (2004), before proceeding to determine whether the documents were otherwise admissible).

[3] The panel found Appellant guilty of five offenses related to the events of March 16, 2004, in Ansbach, Germany:

the German civilian police (Polizei) organized a drug sting

operation.  Private Tyler Swafford agreed to work with the

---

CHARGE IV:  VIOLATION OF THE UCMJ, ARTICLE 112A

SPECIFICATION:  In that Sergeant Robert B. Clayton, U.S. Army, did, at or near Ansbach, Germany, on or about 16 March 2004, wrongfully possess some amount of marijuana with intent to distribute the said controlled substance.

CHARGE V:  VIOLATION OF THE UCMJ, ARTICLE 111

SPECIFICATION:  In that Sergeant Robert B. Clayton, U.S. Army, did, at or near Ansbach, Germany, on or about 16 March 2004, at or near the intersection of Feuchtwanger Strasse and the turn-off lane of Hohenzollern Ring, operate a vehicle, to wit:  a passenger car, in a wanton and reckless manner by driving the vehicle back and forth several times in a hectic manner and did thereby cause said vehicle to injure Jurgen Brenner.

CHARGE VI:  VIOLATION OF THE UCMJ, ARTICLE 128

SPECIFICATION:  In that Sergeant Robert B. Clayton, U.S. Army, did, at or near Ansbach, Germany, on or about 16 March 2004, assault Jurgen Brenner, who then was and was then known by the accused to be a person then having and in the executive of civilian law enforcement duties, by striking him on the leg with a vehicle, to wit: a passenger car.

CHARGE VII:  VIOLATION OF THE UCMJ, ARTICLE 134

SPECIFICATION 1:  In that Sergeant Robert B. Clayton, U.S. Army, did, at or near Ansbach, Germany, on or about 16 March 2004, wrongfully endeavor to impede an investigation in the case of United States v. Clayton, by disposing of evidence.

SPECIFICATION 2:  In that Sergeant Robert B. Clayton, U.S. Army, did, at or near Ansbach, Germany, on or about 16 March 2004, flee apprehension by Ansbach Criminal Police, armed policemen, persons authorized to apprehend the accused, which conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

German police to apprehend Ms. Monica McLemore, his drug dealer whom the German police had been investigating since November 2003. Private Swafford arranged a time and place to meet Ms. McLemore to purchase "[o]ne thousand pills of ecstasy for 7,500 Euro." Appellant drove the car with Ms. McLemore to the designated location on March 16, 2004. When Ms. McLemore indicated that she had the drugs with her, Private Swafford popped the trunk of his car to "signal the bust" to the German police. However, the German police failed to respond to the signal, so Private Swafford "told [Ms. McLemore] that [they] were going to a different location."

En route to the second location, the German police tried to stop Appellant and Ms. McLemore at a traffic light. Private Swafford testified about what happened next:

> A Polizei car, marked Polizei car, came to the intersection. It was about three cars in front of me, stopped, had its lights on. A Polizei got out and started walking on the left side of the traffic up towards my car, and I looked back and I saw one of the German investigators running towards their car behind me. He had his gun out. He put his gun to the window, tried to open the door, and the door was locked.
>
> . . . .
>
> There was a gunshot fired after -- when -- well when the Polizei came up to the window of the car, he had his gun to the window and the car took off around mine.

A chase ensued, and the German police lost sight of the car for about two minutes before finding it stopped and empty with the doors open. Ms. McLemore was apprehended immediately and Appellant fled on foot, only to be apprehended approximately twenty-five minutes later.

The German police then collected drugs from the car driven by Appellant and along the route of the chase. The lead German investigator, Mr. Wolfgang Held, "personally picked up . . . three packages" of psilocybin mushrooms at the scene. Another German police officer recovered a "rucksack" containing an array of drugs "in the foot area of the passenger seat" of the car driven by Appellant. Other German police officers collected drugs from along the route of the chase, some of which were brought to their attention by pedestrians who said that the drugs were discarded from a car "driving at a high rate of speed . . . and after that vehicle was a police car." Of the police officers who collected the drugs, including the marijuana at issue in Charge IV and its specification, only Mr. Held and one other officer testified at Appellant's court-martial. None of the pedestrians testified about how and where they found the drugs. No witness testified about how the drugs came to be located where they were found along the chase route or that they actually saw Appellant or Ms. McLemore discard the drugs.

At Appellant's court-martial, the military judge admitted into evidence, over defense counsel's objections, a report from the German police pursuant to the business records exception to the hearsay rule. Military Rule of Evidence (M.R.E.) 803(6). The report in question listed the drug evidence collected from the car and the chase route, including "where the narcotics were found, the time when it was found, and the police officer who found it or who took it over from a pedestrian." Mr. Held verified that he prepared the report as part of the "regular course of [his] business" and such documents are "always prepared when evidence is received." Mr. Held also testified that, although he counted and recorded the drugs in the report, he personally seized only three items and none of the marijuana listed in the report, saw the rucksack in the car but did not personally seize it from the car, and did not see anything thrown from the car.

In addition, the original report, about which Mr. Held testified, was in German, and the military judge submitted to the panel a "redacted American version" of the report translated into English. Although defense counsel only objected to the admission of the German version, the English version merely translated the content of the German version into a language spoken by the members of the panel. However, the German version of the document is dated March 24, 2004, eight days after

Appellant's arrest.  The translation is dated September 1, 2004, which was during Appellant's court-martial.  The German document contains seven paragraphs, and the translation contains four paragraphs because certain drugs later seized from Ms. McLemore's quarters that were listed in the German version were not included in the translation.

### DISCUSSION

This Court reviews a military judge's decision to admit or exclude evidence for an abuse of discretion.  United States v. Datz, 61 M.J. 37, 42 (C.A.A.F. 2005).  "We review factfinding under the clearly-erroneous standard and conclusions of law under the de novo standard."  United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F. 2004) (citation and quotation marks omitted).  We must first determine whether the report is constitutionally admissible as nontestimonial hearsay.  Rankin, 64 M.J. at 353.  Whether evidence constitutes testimonial hearsay is a question of law reviewed de novo.  United States v. Foerster, 65 M.J. 120, 123 (C.A.A.F. 2007).  Because we conclude that the report is testimonial under Crawford, 541 U.S. 36, and its progeny, we hold that the military judge erred in admitting the report as evidence.  See, e.g., Davis v. Washington, 547 U.S. 813 (2006); Rankin, 64 M.J. at 348.  We further hold that this constitutional error was not harmless beyond a reasonable doubt.

8

United States v. Clayton, No. 08-0417/AR

Error Under Crawford

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him."  U.S. Const. amend. VI. This right applies to testimonial statements made out of court because the declarant is a witness within the meaning of the Sixth Amendment, and thus the accused must be afforded the right to cross-examine that witness.  Foerster, 65 M.J. at 123 (citing Davis, 547 U.S. at 821).  Although Mr. Held and one other officer who discovered some of the drugs testified, two other officers listed in the report, as well as the pedestrians who provided the drugs to the officers, did not testify at Appellant's court-martial.  Further, only one of the officers who found part of the marijuana at issue in Charge IV and its specification testified, and he discovered it with the help of pedestrians.  Appellant did not have the opportunity to cross-examine these potential witnesses.  The question becomes whether their statements in the report are testimonial, and thus whether the report's admission as evidence violated Appellant's right to confront witnesses against him.

Although the Supreme Court has not defined testimonial hearsay precisely, it has said that the distinction between testimonial and nontestimonial hearsay aims to guard against "abuses at which the Confrontation Clause was directed," like

"use of ex parte examinations as evidence against the accused."

Crawford, 541 U.S. at 50, 68.  Most pertinent to this case, the

Supreme Court has identified "'statements that were made under

circumstances which would lead an objective witness reasonably

to believe that the statement would be available for use at a

later trial'" as an example of "core" testimonial hearsay.

Rankin, 64 M.J. at 351 (quoting Crawford, 541 U.S. at 52).  In

turn, this Court has established "a number of questions . . .

relevant in distinguishing between testimonial and

nontestimonial hearsay made under circumstances that would cause

an objective witness to reasonably believe that the statement

would be available for use at a later trial."  Id. at 352.

> First, was the statement at issue elicited by or made
> in response to law enforcement or prosecutorial
> inquiry?  Second, did the statement involve more than
> a routine and objective cataloging of unambiguous
> factual matters?  Finally, was the primary purpose for
> making, or eliciting, the statements the production of
> evidence with an eye toward trial?

Id.; see also United States v. Harcrow, 66 M.J. 154, 158

(C.A.A.F. 2008); Foerster, 65 M.J. at 123.  We answer all three

of these questions in the affirmative.  Thus, the report is

testimonial.

First, the report was prepared in the course of an

investigation.  Mr. Held, a German police officer, prepared the

original report after a drug sting operation that resulted in

Appellant's arrest for suspected drug possession.  See Harcrow,

66 M.J. at 159 (finding that a state police laboratory report from analysis conducted after the accused had become a suspect and that identified him as a suspect was testimonial hearsay). The report also incorporated the statements of other officers regarding where they, or the pedestrians, found the drugs, which they provided in furtherance of the investigation as part of their law enforcement duties. Furthermore, the German version of the report was not translated into English until Appellant's court-martial in response to a prosecutorial request.

Second, the report "involve[d] more than a routine and objective cataloging of unambiguous factual matters." Rankin, 64 M.J. at 352. Although Mr. Held testified that such reports are routinely created, there is an important distinction between a routine police report, such as a log, and an investigative report that describes criminal events. Mr. Held prepared this report eight days after March 16, 2004, to describe the drugs found in the car and along the chase route, who found them, and where they found them. Moreover, Mr. Held testified based on the German version of the document, but the military judge admitted the English version into evidence. Although the English version translates the information from the German version, Mr. Held did not personally create the English version and it was facially different from the German version. Therefore, whatever arguments might be made about the initial

German report, the English version certainly was not a routine report of the German police.

Further, the report does more than objectively inventory the marijuana or record the chain of custody; it links the marijuana listed therein to the scene and to Appellant by extension. The information included in the report is subject to debate, such as how the marijuana was found and traced to Appellant, as well as why one of the items listed was "(supposedly) marihuana."[4] Accordingly, the circumstances in which the report was created imply that the report contained more than objective, unambiguous facts, which the report itself confirms.

Third, the report and its English translation were created "with an eye toward trial." Rankin, 64 M.J. at 352. Mr. Held took eight days to create the report and included in it information about who found the drugs and where. The lapse of time and content imply that the report is more than a police log and was intended to serve as an exhibit in Appellant's future prosecution. The date of the English translation of the report and the discussion about it during the Article 39(a), UCMJ, 10

---

[4] Although the original German version of the report also includes "(vermutl.) marihuana," which translates as "(supposedly) marihuana," no explanation was provided regarding why or how it was only "(supposedly) marihuana." If it was only "(supposedly) marihuana," the question arises as to why it was included in the report at all and whether or not it was tested to verify that it was marijuana.

U.S.C. § 839a (2000), session at Appellant's court-martial reflect that it was created specifically for Appellant's court-martial.  The English translation of the report also tailored the original German report to Appellant's court-martial by excluding drugs recovered from Ms. McLemore's quarters, which had not been linked to Appellant.

For these reasons, we conclude that the German police report and its English translation are testimonial hearsay.  The military judge thus committed constitutional error by admitting testimonial hearsay infringing on Appellant's Sixth Amendment right to confront the officer and pedestrian witnesses against him.

Prejudice

"The Government bears the burden of establishing that a constitutional error has no causal effect upon the findings." United States v. Othuru, 65 M.J. 375, 377 (C.A.A.F. 2007).  To carry its burden, the Government must demonstrate that there is no reasonable possibility that the testimonial German police report contributed to the contested finding of guilty to possession of marijuana with the intent to distribute.  Id.

> To say that an error did not "contribute" to the
> ensuing verdict is not, of course, to say that the
> jury was totally unaware of that feature of the trial
> later held to have been erroneous. . . .
>
> To say that an error did not contribute to the verdict
> is, rather, to find that error unimportant in relation

> to everything else the jury considered on the issue in
> question, as revealed in the record.

Id. (quoting Yates v. Evatt, 500 U.S. 391, 403 (1991), overruled

on other grounds by Estelle v. McGuire, 502 U.S. 63, 72 n.4

(1991)).  The Government has not carried its burden in this

case.

On the one hand, the Government presented a strong case

against Appellant and independently established much of the

information contained in the report.  Among other things,

multiple witnesses testified to the events that took place,

including the dramatic car chase, and the Government entered

photographs of the seized marijuana into evidence.

On the other hand, the report effectively relieved the

Government of its burden to present direct testimony regarding

where the marijuana was recovered, how it was traced to

Appellant, and other necessary elements to prove that Appellant

possessed marijuana with the intent to distribute.  Rather than

forcing the members to hear and weigh testimony from the

officers listed in the report and draw their own conclusions

about the truth of their stories, the report allowed the members

to rely on seemingly objective facts contained in the document.

Further, the report offered members a straightforward, written

accounting of the evidence, which, for some members, might well

14

have carried more weight than their recollections of witness testimony.

Additionally, the report contained a detailed catalogue of drugs other than marijuana in amounts clearly not intended for personal consumption.[5] The military judge correctly instructed the members that they could rely on circumstantial evidence, such as the packaging and amount of drugs, to conclude that Appellant possessed the marijuana with intent to distribute. However, with those instructions in mind and looking at the list of drugs and amounts in the report, a reasonable member would have been hard pressed not to conclude that Appellant possessed the marijuana with the intent to distribute.

In light of these factors, we are unable to conclude beyond a reasonable doubt that the error did not contribute to the verdict of guilty of possession of marijuana with the intent to distribute. Consequently, the error was not harmless beyond a reasonable doubt.

### DECISION

The decision of the United States Army Court of Criminal Appeals is set aside with respect to Charge IV and the specification thereunder and with respect to the sentence. The remaining findings are affirmed. The record of trial is

---

[5] Among other things, the report indicated that the drugs seized included 62 grams of marijuana, 79.5 pills of ecstasy of six different varieties, and 75.6 grams of psilocybin mushrooms.

returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence or, in the alternative, that court may remand for a rehearing on the affected charge and specification.

STUCKY, Judge (concurring in part and in the result):

I concur with the majority that the German polizei (police) report:  (1) is not a business or public record under Military Rule of Evidence (M.R.E.) 803(6) or M.R.E. 803(8); (2) is testimonial; (3) should not have been admitted into evidence at Appellant's court-martial; and (4) that the error was not harmless beyond a reasonable doubt.  However, the majority opinion implies that there are Confrontation Clause issues that are specific to the English translation and are independent from the Confrontation Clause issues with the original German police report.  I disagree.

The opinion suggests that there is some Confrontation Clause significance to the facts that the English translation was prepared months after the incident and after the preparation of the original report; was prepared at the request of the prosecution in anticipation of trial; and was not prepared by the person who prepared the original.  Those facts might be relevant to the admissibility of the original report, but are not relevant to that of the translation.  When a party attempts to introduce both a translation and the document translated into evidence, if the translation is accurate -- and Appellant made no objection to the accuracy of the translation in this case -- the admissibility of the translation is wholly dependent upon

the admissibility of the underlying document.  Since the original report was not admissible, neither was the translation.

The majority opinion also suggests that there is some significance to the fact that the translation was redacted.  It appears that the redactions were made to delete evidence of drugs that the German police were unable to link to Appellant. Absent an objection from Appellant on the ground of completeness, M.R.E. 106, this fact has no significance as to the admissibility of a translation.

I concur in the result.