# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39099**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Thomas J. NEILL**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 December 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to E-1. Sentence adjudged 6 April 2016 by GCM convened at Whiteman Air Force Base, Missouri.

*For Appellant:* Lieutenant Colonel Anthony D. Ortiz, USAF; Major Jarett F. Merk, USAF.

*For Appellee:* Major Amanda L.K. Linares, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, KIEFER, and MINK, *Appellate Military Judges.*

Judge KIEFER delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

KIEFER, Judge:

A military judge convicted Appellant of two specifications of larceny under Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921, and

one specification of housebreaking under Article 130, UCMJ, 10 U.S.C. § 930. Appellant was found not guilty of three specifications of reckless driving under Article 111, UCMJ, 10 U.S.C. § 911, and one specification of wrongful possession of a controlled substance, Clonazepam, under Article 112a, UCMJ, 10 U.S.C. § 912a. The military judge sentenced Appellant to a bad-conduct discharge, four months confinement, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant raises a single assignment of error alleging the military judge improperly admitted video evidence of the larceny and housebreaking offenses over Defense's objection. We find no error and affirm.

## I. BACKGROUND

Appellant was assigned to Whiteman Air Force Base (AFB), Missouri. In the early morning hours of 14 December 2015, Appellant went to a bar called "A Little Off Base" in Knob Noster, Missouri. Finding the establishment closed, Appellant proceeded to kick in a rear door to gain entry. While inside the bar, Appellant stole bottles of liquor and money from various locations in the bar.

At about 1300 on 14 December, Ms. TM, the owner of the bar, was contacted by one of her customers who told her the back door to the establishment was open. Ms. TM initially sent one of her managers to review the situation. Ms. TM arrived at about 1500 and observed damage to the rear exterior door as well as damage to an interior office door. She also noted that money and liquor bottles were missing.

Detective DM, a local law enforcement officer, investigated the offenses. He inspected the scene, viewed the video from the bar's surveillance system, downloaded the necessary data, and safeguarded the evidence for trial. While reviewing the bar's video, Detective DM identified a person who arrived at the bar in what appeared to be a Ford sedan. The detective observed this person attempt entry at various locations, ultimately breaking in through a rear door. The detective also took note of various characteristics of the person including his size, build, and clothing items with specific logos.

Detective DM next interviewed witnesses, gathered additional video evidence from a nearby convenience store, and searched for the vehicle he had observed in the bar's surveillance video. He found a similar Ford sedan at a nearby bar, and when he responded to that location he saw a person who matched the individual in the Little Off Base surveillance video. Detective DM ran the license plate of the vehicle. He determined Appellant was the owner and lived on Whiteman AFB. The detective then made contact with the Air Force Office of Special Investigations at Whiteman AFB and organized a trash

pull from Appellant's residence. The trash pull yielded items taken from a Little Off Base the previous evening. Detective DM also assisted in executing a search authorization at Appellant's residence and found clothing items that matched what he had seen in the bar's surveillance video. The totality of the evidence collected pointed to Appellant as the offender.

At trial, Appellant challenged the admission of video evidence from the bar arguing that it was not properly authenticated. Appellant alleged that the Government failed to establish the surveillance system was reliable and failed to maintain a proper chain of custody. The military judge overruled these objections finding that the evidence was sufficiently authenticated.

## II. DISCUSSION

### A. Authentication of Evidence

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009). Under the abuse of discretion standard, we review the military judge's findings of fact under the clearly erroneous standard and his or her conclusions of law de novo. *Id.*

To be admissible, evidence must be properly authenticated. Mil. R. Evid. 901(a). To satisfy the requirement for authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.*

The Government is not required to show a perfect chain of custody. *United States v. Courts*, 4 M.J. 518, 520 (C.G.C.M.R. 1977). Gaps in the chain of custody do not necessarily prevent admission of evidence. *United States v. Harris,* 55 M.J. 433, 440 (C.A.A.F. 2001); *see also United States v. Maxwell*, 38 M.J. 148 (C.M.A. 1993). Deficiencies in the chain may go to the weight of the evidence rather than admissibility. *Maxwell*, 38 M.J. at 152.

#### 1. The Government's evidence satisfied the foundational requirements to authenticate the video.

Appellant argues that the Government failed to establish an adequate foundation for the video offered in evidence because there was no testimony that the surveillance system was accurate or had been previously tested. We disagree.

The Government called Ms. TM as a witness at trial. Ms. TM testified that she had owned the bar for five years prior to the events in question. She was familiar with the layout of the bar, the areas surrounding the exterior, and her inventory of liquor bottles and money. She explained that the video surveillance system had been installed in 2012 and consisted of four cameras with

two on the south side, one showing the rear of the building, and one showing the front door. She noted that the system records 24 hours a day, seven days a week, and the recordings are kept for three to six months. She also testified that the system was recording the night of the incident.

After establishing this basic foundation, Ms. TM testified she had reviewed the video of the night in question several times. Trial counsel then played portions of a video from a disc, and Ms. TM testified that the images shown accurately depicted parts of her bar from angles consistent with the position of the video surveillance cameras. She also testified that the video accurately showed the condition of the bar the afternoon after the incident. Ms. TM further stated that she assisted Detective DM in downloading the video to the detective's thumb drive.

With respect to her personal observations the afternoon following the incident, Ms. TM noted that there was damage to the rear door and damage to an office door inside the bar. She also testified to several items that were missing, including money from a bank deposit bag that was kept in the kitchen, money from a lock box for the bar's pool league, and several bottles of liquor. Ms. TM noted that none of the damage existed when the bar was closed the night before, and the liquor bottles and money had been present. Ms. TM further testified that several photos offered into evidence accurately depicted various areas of the bar as well as damage that she personally observed the afternoon following the break in.

The court notes that the photos, which were admitted without objection, are consistent with the conditions of the bar and events depicted in the video, such as a person apparently kicking the rear door and actual damage to this door.

Appellant argues that there is insufficient evidence to establish the surveillance system accurately captured the events of the night in question because there was no specific testimony that the system was reliable or had been tested. Appellant cites Military Rule of Evidence (Mil. R. Evid.) 901(b)(9) and alleges that the Government must prove that evidence about a process or system is reliable, the system was in working order, and the video file was handled and safeguarded properly from the time it was removed until trial.

Mil. R. Evid. 901(b) sets forth some means of authenticating evidence but states that it is "not a complete list." Nonetheless, in this case, Ms. TM's testimony directly establishes that the system was in working order on the night in question. Further, her detailed knowledge about the surveillance system, location of the cameras, layout of the bar, personal observations of the damage and condition of the bar following the incident, along with the video

itself, all demonstrate the reliability of the system. Although she did not personally witness in real time the events shown on the video, her extensive knowledge of the scenes depicted was sufficient to establish an adequate foundation. Further, there was no evidence challenging the system's ability to capture events within view of the cameras or suggesting that images were altered in any way.

The Government is not required to present evidence overcoming every possible claim of inaccuracy, especially when none is raised. The proponent need only establish that evidence is what the proponent claims it is. Mil. R. Evid. 901(a). Here, the Government offered the video as evidence of certain events and the condition of the bar prior to and after those events. The testimony, corroborating photos and evidence, and video itself satisfy the basic foundational requirements. Further challenge goes to the weight of the video evidence, not its admissibility. *Maxwell*, 38 M.J. at 152.

### 2. The Government also established a sufficient chain of custody for the evidence.

Appellant also argues that the Government failed to establish that the evidence used at trial was maintained through a proper chain of custody. In particular, Appellant argues that Ms. TM could not testify to all of the steps in getting the video from the surveillance system to the compact disc used at trial and that Detective DM was unfamiliar with the specific model system in use at the bar.

Ms. TM, however, testified to a detailed understanding of the operation of her system and stated that she was familiar with how to download video from the system to a thumb drive. The Government also called Detective DM as a witness. He explained that he first viewed video of the events on the system at the bar. He then downloaded the data to a thumb drive with the assistance of Ms. TM, the owner of the system. Detective DM viewed the downloaded video and confirmed it accurately represented the video he saw on the bar's surveillance system. He then later transferred the information from the thumb drive to a compact disc for use at trial, and during trial he further authenticated that the images on the disc were consistent with what was on the thumb drive and what he viewed on the surveillance system. The totality of the testimony of Ms. TM and Detective DM and other corroborating evidence were more than adequate to properly authenticate the video. Accordingly, the military judge did not abuse his discretion in admitting this evidence.

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles

59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court