*355 Judge BAKER delivered the opinion of the Court.
At a court-martial composed of members, Appellant was convicted, contrary to his pleas, of forcible sodomy, assault and battery upon a military prison guard and three specifications of indecent assault in violation of Articles 125, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 928, 934 (2000), respectively. The adjudged and approved sentence included a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction in grade to E-l. The United States Army Court of Criminal Appeals affirmed. United States v. Elfayoumi, No. ARMY 20010415 (A. Ct.Crim.App. Jan. 18, 2007) (unpublished). The question presented is whether a member, having expressed a view that homosexuality and pornography were “morally wrong,” should have been excused on the basis of implied bias. We conclude the military judge did not abuse his discretion in denying the challenge for cause and affirm.
BACKGROUND
During general voir dire Major (MAJ) G stated that he had moral and religious objections to homosexuality. In addition, during individual voir dire he responded to the military judge’s questions in the following manner:
MJ: Earlier you indicated you had some strong objections to homosexuality?
MEM: That is correct, sir.
MJ: Could you explain a little bit about that.
MEM: I feel that it is morally wrong. It is against what I believe as a Christian and I do have some strong opinions against it.
MJ: You notice[ ] on the [charge sheet] that the word “homosexual” is not there?
MEM: Yes, sir.
MJ: But there are male on male sexual touchings alleged.[1]
MEM: Yes, sir.
MJ: Do you think, with your moral beliefs that you can fairly evaluate the evidence of this ease given the nature of the allegations?
MEM: Yes, sir.
MJ: Let’s say we get to sentencing and the accused is convicted of some or all of the [offenses]---Let’s talk about these offenses involving indecent assault and the forcible sodomy. If it got to that point in the trial and the accused was convicted of some or all of those offenses, do you think you could fairly consider the full range of punishments?
MEM: Yes, sir.
MJ: Do you think you could honestly consider not discharging the accused even with that kind of conviction?
MEM: I would have a hard time with that, sir.
MJ: Could you consider it though?
MEM: Yes, sir.
MJ: After hearing the entire case, you wouldn’t [categorically] exclude that?
MEM: No, sir.
MJ: Now understanding there may be administrativef ] consequences and we all know those, but as a court member, that’s not your concern. Do you understand that?
MEM: Yes, sir.
On the question responded: of pornography, MAJ G
*356 [DC:] In response to one of the questions, you stated that you had a moral aversion to pornography.
[MEM:] Yes, I believe it is wrong also.
[DC:] Would you consider someone who possessed or used pornography more likely to commit an immoral act ... just because they have possessed that?
[MEM:] No.
[DC:] What about an act that you might perceive to be sexually immoral?
[MEM:] If I knew someone who watched pornography, are they more apt to do a sexual act that I consider to be immoral?
[DC:] Yes, sir.
[MEM:] Does that make them immoral, no.
Based on these responses, Appellant argues that MAJ G should have been removed for cause based on implied bias. According to Appellant, “[r]egardless of the court member responses in this case, there is a widespread view” among the public that the military, generally, is biased against homosexuals serving in the military. According to Appellant, it follows that when a member expresses strongly held views against homosexuality in a case where “the evidence is so closely connected to allegations of homosexual behavior,” it puts “too much of a strain on the military justice system” to allow such a member to sit. With respect to MAJ G’s views on pornography, Appellant argues, MAJ G exhibited an inelastic attitude, which prejudged the punitive outcome.
DISCUSSION
“‘As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.’ ” United States v. Downing, 56 M.J. 419, 421 (C.A.A.F.2002) (citation omitted); United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F.2006). Rule for Courts-Martial (R.C.M.) 912(f)(l)(N) requires an excusal for cause where it appears an individual “[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.” This rule encompasses challenges based upon both actual and implied bias. United States v. Clay, 64 M.J. 274, 276 (C.A.A.F.2007); see United States v. Ai, 49 M.J. 1, 4-5 (C.A.A.F.1998). Implied bias exists when most people in the same position as the court member would be prejudiced. United States v. Napolitano, 53 M.J. 162,167 (C.A.A.F.2000); United States v. Warden, 51 M.J. 78, 81 (C.A.A.F.1999); United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F.1996). To test whether there is substantial doubt about the fairness of the trial, we evaluate implied bias objectively, “‘through the eyes of the public,’ ” reviewing “ ‘the perception or appearance of fairness of the military justice system.’” United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F.2008) (quoting United States v. Schlamer, 52 M.J. 80, 92-93 (C.A.A.F.1999); United States v. Dale, 42 M.J. 384, 386 (C.A.A.F.1995)). This review is based on the “totality of the circumstances.” United States v. Terry, 64 M.J. 295, 302 (C.A.A.F.2007) (citation and quotation marks omitted). Although we review issues of implied bias for an abuse of discretion, because we apply an objective test, we apply a less deferential standard than we would when reviewing a claim of actual bias. United States v. Armstrong, 54 M.J. 51, 54 (C.A.A.F. 2000); United States v. Napoleon, 46 M.J. 279, 283 (C.A.A.F.1997).
As Appellant notes, the question of homosexuality and military service may evoke strongly held moral, legal, and religious views. The range and depth of these views is reflected in debate over those personnel policies identified by the rubric “Don’t Ask, Don’t Tell.” These personnel policies, like the military criminal code, are set in law by the political branches — the Congress and the Executive.
The duty of judges is to uphold the law in constitutional context. This includes the constitutional and statutory duty to ensure that an accused receives a fair trial. That means, among other things, that where a court-martial is conducted with members, deliberations will be based on the four corners of the law and not the personal views of members. To accomplish this end, the military judge has a number of tools, including the authority to oversee and conduct voir dire and to instruct members on the law and their deliberations.
*357 In this case, the military judge used those tools. Faced with MAJ G’s initial statements expressing a moral and religious objection to homosexuality as well as pornography, the military judge tested for personal bias that might manifest itself during the members’ deliberations, regardless of the military judge’s instructions on the law. Among other things, the military judge disaggregated the question of homosexuality from the charged criminal conduct at issue — forcible sodomy. The military judge also permitted defense counsel to question MAJ G and did not restrict that questioning. MAJ G’s answers to defense counsel’s questions about his views on pornography revealed that MAJ G could distinguish between that which he might find immoral and that which the law might deem criminal. Further, defense counsel was permitted to ask questions, and there is no indication that defense counsel was precluded from asking any additional questions.
As a general matter, moral or religious views are not per se disqualifying where a member otherwise demonstrates a capacity to hear a case based on the four corners of the law and as instructed by the military judge. But recognizing the human condition, the law gives a military judge the added flexibility, and duty, to err on the side of caution where there is substantial doubt as to the fairness of having a member sit. Thus, the military judge need not impugn the integrity or values of a member in finding actual bias, but can in context rely on the implied bias/liberal grant doctrine if substantial doubt arises that a member can put his or her views aside.
It would not be unusual for members to have strongly held views about lawful conduct involving sex or pornography. Indeed, in today’s society it will be hard to find a member who does not hold such views, one way or another. So too, a member might have a strongly held view about unlawful conduct — murder, shoplifting, forcible sodomy, etc. We expect that most, if not all members, would. Also, we surmise that most members would have a natural propensity to be either lenient or punitive depending on their personal views on these subjects. The law anticipates this human condition. Thus, the question is not whether they have views about certain kinds of conduct and inclinations regarding punishment, but whether they can put their views aside and judge each particular case on its own merits and the law, such that appellate courts, in applying R.C.M. 912, are not left in substantial doubt as to the fairness or impartiality of the members. Here, because the military judge specifically questioned MAJ G on his ability to separate his personal views from the facts of the case, and in light of MAJ G’s responses, we conclude that the military judge did not abuse his discretion in denying the challenge for cause.
DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed.

. The relevant portions of the offenses to which the military judge was referring read as follows:
Charge: I VIOLATION OF THE UCMJ, ARTICLE 125
SPECIFICATION: In that [Appellant] ... did ... commit sodomy with Private Mark [¶] by force and without the consent of the said Private Mark [H],
Charge: III VIOLATION OF THE UCMJ, ARTICLE 134
SPECIFICATION 1: In that [Appellant] ... did ... commit an indecent assault upon Alexander [G] ... by rubbing his hand against the leg and private parts of Alexander [G]____
SPECIFICATION 3: In that [Appellant] ... did ... commit an indecent assault upon Charles [N] ... by massaging his shoulders and attempting to massage his groin area----
SPECIFICATION 4: In that [Appellant] ... did ... commit an indecent assault upon Keith [B] ... by placing his hand on Keith [B]’s inner thigh____