# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class JOHN R. SUTTON II
### United States Air Force

### ACM S32143

### 21 August 2014

Sentence adjudged 31 October 2012 by SPCM convened at the Presidio of Monterey, California. Military Judge: Jill M. Thomas.

Approved Sentence: Bad-conduct discharge, confinement for 30 days, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Katherine E. Oler; Lieutenant Colonel C. Taylor Smith; Major Jason M. Kellhofer; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A panel of officer and enlisted members at a special court-martial convicted the appellant, contrary to his pleas, of one specification of wrongful sexual contact and one specification of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The members found the appellant not guilty of another specification of wrongful sexual contact but guilty of the lesser included offense of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The adjudged sentence consisted of a bad-conduct discharge, confinement for 30 days, and reduction to E-1. The convening authority approved the sentence as adjudged.

The appellant raises four issues for our consideration: (1) whether the military judge erred by failing to *sua sponte* dismiss a panel member for implied bias; (2) whether the military judge erred in allowing the Government to introduce evidence of similar crimes under Mil. R. Evid. 413; (3) whether the addendum to the staff judge advocate's recommendation erroneously failed to address legal errors alleged by the defense in its clemency submission; and (4) whether the appellant should receive sentencing relief because the Government took 114 days to forward the record of trial for appellate review.

*Background*

The appellant was a student at the Defense Language Institute (DLI) in Monterey, California. He had previously completed basic military training and spent time in an aircrew training program. During both of these training programs, the appellant engaged in inappropriate touching of fellow students.

DLI consists of several intense programs in various languages lasting between 26 and 64 weeks. The appellant was a student in an Arabic language program. During his time in this program, he openly identified himself as gay to his classmates. Several male students alleged the appellant inappropriately touched them or invaded their personal spaces.

The charge and specifications in this case involve the appellant's actions toward two fellow DLI students, one female and one male. The first incident took place when the appellant traveled to a mall in Monterey with two fellow female students. At the mall, he sat next to one of the students, whom he had just met. As two male students spotted the group and began talking to the female student sitting next to the appellant, the appellant abruptly grabbed the female student's breast. The female student promptly moved the appellant's hand away.

The other incident took place when a male student, Airman First Class (A1C) BB, was cleaning the water fountain by himself in a dormitory hallway. The appellant approached A1C BB, complimented him on the shorts he was wearing, and briefly placed a hand on his shoulder. A1C BB did not express offense at the appellant's actions, as they were passing and not perceived as a sexual advance. The appellant moved away from A1C BB, who resumed cleaning. However, the appellant then approached A1C BB from behind, grabbed his hips, placed his clothed erect penis against A1C BB's clothed buttocks, and engaged in "grinding" for several seconds. As he left, the appellant grabbed A1C BB's buttocks with his hand.

The appellant was charged with and convicted of abusive sexual contact and wrongful sexual contact for his actions toward A1C BB. He was charged with wrongful

sexual contact for his actions toward the female student, but the members convicted him only of the lesser included offense of assault consummated by a battery.

Further facts relevant to each issue are laid out below.

*Failure to Sua Sponte Excuse a Member*

The appellant alleges the military judge erred by failing to *sua sponte* excuse a member who served as the panel president, Major (Maj) MK. The appellant contends Maj MK should have been excused under the implied bias standard because she stated in voir dire that she belonged to a church or organization that believes homosexual conduct is morally wrong and she believed it was an individual's personal choice to be gay. The appellant also contends a question Maj MK asked in findings about the Air Force's current policy on gays in the military further created a perception that it would not be fair to have her serve as the panel president in this case. We disagree.

A military judge's decision "whether or not to excuse a member *sua sponte* is subsequently reviewed for an abuse of discretion." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002); *United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000)).

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *Strand*, 59 M.J. at 458. Under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). Where there is not a showing of actual bias, "implied bias should be invoked rarely." *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)) (internal quotation marks omitted). However, the military judge maintains responsibility to prevent both the reality and the appearance of bias in courts-martial. *Clay*, 64 M.J. at 277.

Trial defense counsel saw nothing in Maj MK's voir dire answers or her question in findings that caused them any reason to specifically challenge Maj MK.[1] We likewise

---

[1] Trial defense counsel did at one point challenge all the members for implied bias based on their answers to a question she asked about whether they believed an Airman convicted of a sexual assault-type offense should receive some type of punishment. The military judge appropriately denied that challenge and asked proper follow-up questions of each member to ensure they were able to consider the full range of punishments in sentencing.

see no basis for an implied bias excusal of Maj MK. In voir dire, trial defense counsel signaled that the appellant being openly gay would be an aspect of the defense case and asked two general questions on this subject that led to Maj MK's answers. First, trial defense counsel asked, "How many panel members believe that it is morally wrong to commit homosexual acts?" After some consideration, Maj MK answered this question affirmatively. Second, trial defense counsel asked, "How many panel members belong to organizations or churches that believe it is morally wrong to commit homosexual acts?" Again, Maj MK answered affirmatively.

In individual voir dire, Maj MK expanded upon these answers. She first stated she could put aside any kind of preconceived notions or ideas about the morality of homosexuality or homosexual conduct and decide the case solely based on the evidence. Maj MK explained she previously asked trial defense counsel to repeat her first question on this topic because "some of the questions really were like this big range of immoral. For example, it could be a lot of grounds I think." She stated that she could see homosexuality or homosexual conduct being perceived as immoral in some situations but not in all situations. She then reaffirmed that in any situation where she had a purely moral objection to a person's actions, she could set that aside and decide the case solely based on the evidence. Trial defense counsel asked Maj MK no questions on this issue.

We see no reason to believe a reasonable member of the public would perceive any unfairness resulted from Maj MK's service on the panel. Her honest answers to trial defense counsel's questions evinced no firm stance on the morality of homosexuality or homosexual conduct; rather, she merely stated she could see such behavior as "being perceived as immoral" in some but not all situations. In any event, she repeatedly and firmly affirmed that whatever personal beliefs she had would not affect her decisions in this case. Trial defense counsel was sufficiently satisfied with Maj MK's answers that she asked no follow-up questions on this topic and did not challenge Maj MK, despite otherwise being very active in voir dire and in exercising challenges.

We likewise see no concern caused by Maj MK's question in findings about the Air Force's current policy toward gays serving in the military. The appellant's court-martial took place soon after a significant change in the law concerning the compatibility of homosexual conduct with military service.[2] The defense made the appellant's sexual orientation a central issue in findings, and Maj MK merely asked a question to satisfy herself as to official policy concerning the ability of gays to serve in the Air Force. The military judge properly answered her question (without objection by trial defense counsel), and this simple question causes no concern that a member of the public would doubt the fairness of the appellant's trial.

[2] Openly-gay people were officially permitted to serve in the armed forces starting approximately one year before the appellant's court-martial. Before that, federal law declared that homosexual conduct (including declarations of homosexuality) was incompatible with military service and could be grounds for discharge. *See* Don't Ask, Don't Tell Repeal Act of 2010, Pub. L. No. 11-321, 124 Stat. 3515 (2010).

Our superior court has held a military judge did not abuse his discretion in a case involving allegations of homosexual behavior by denying a challenge for cause of a member who expressed moral and religious objections to homosexuality and pornography. *United States v. Elfayoumi*, 66 M.J. 354 (C.A.A.F. 2008). The Court recognized that moral and religious views are not per se disqualifying, and that it is not unusual for members to have strongly held views about lawful conduct involving sex. *Id.* at 357. The question, the Court held, "is not whether they have views about certain kinds of conduct . . . but whether they can put their views aside and judge each particular case on its own merits and the law." *Id.* Here, it is not even clear that Maj MK had well-defined moral or religious views about homosexuality or homosexual conduct, but in any event, she left no doubt that she could properly decide this case based on the evidence and the law. The military judge committed no error by not sua sponte excusing her.

*Evidence of Similar Crimes*

In findings, the Government provided notice of its intent to elicit the testimony of A1C JW, an Airman who attended aircrew training with the appellant, under Mil. R. Evid. 413 as evidence of similar crimes in a sexual assault case. The defense moved to preclude such evidence. After hearing A1C JW's testimony in motions practice, the military judge permitted A1C JW's testimony, finding it was evidence of another sexual assault offense and was admissible under a balancing of its probative value and potential for prejudicial effect.

A1C JW testified as to an incident that took place while he and the appellant were in aircrew training. A1C JW was eating a snack in the classroom and dropped some crumbs on the pants of his uniform. He was wiping off the crumbs when the appellant reached over and started also wiping the crumbs off A1C JW's pants. A1C JW told the appellant he would take care of it, but the appellant persisted and then placed his hand on the inner left side of A1C JW's lap, about four inches from A1C JW's groin. A1C JW told the appellant to stop; the appellant replied, "Just say yes." The appellant contends the military judge abused her discretion when she admitted this testimony under Mil. R. Evid. 413.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Solomon,* 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)) (internal quotation marks omitted).

Mil. R. Evid 413(a) provides "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." Our superior court has noted that inherent in Mil. R. Evid. 413 is a general presumption in favor of admission. *United States v. Berry*, 61 M.J. 91, 94-95 (C.A.A.F. 2005). Three threshold requirements exist for admitting evidence of similar offenses in a sexual assault case under Mil. R. Evid. 413: (1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under Mil. R. Evid. 401 and Mil. R. Evid. 402. *Solomon*, 72 M.J. at 179.

The appellant asserts that A1C JW's testimony was not admissible under Mil. R. Evid. 413 because the conduct described did not fall within the definition of a sexual assault offense under Mil. R. Evid. 413(d). Alternatively, he contends the incident with A1C JW is insufficiently similar to the charged actions to support the admissibility of A1C JW's testimony.

We reject the appellant's contention that A1C JW's testimony did not fall within the definition of a sexual assault offense under Mil. R. Evid. 413(d). Mil. R. Evid. 413(d)(1) states that a sexual assault offense for purposes of this rule includes "any sexual act or sexual contact, without consent, proscribed by the Uniform Code of Military Justice." The military judge appropriately recognized that the appellant's actions described in A1C JW's testimony could be characterized as wrongful sexual contact or abusive sexual contact. Under those offenses as defined at the time of the appellant's offenses, sexual contact was defined in relevant part as "the intentional touching, either directly or through the clothing, of the . . . inner thigh . . . of another person . . . with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person." *Manual for Courts-Martial, United States*, Part IV, ¶ 45a. (t)(2) (2008 ed.). The record reflects that the appellant touched A1C JW "on the inside of his left thigh about 4 inches from the seam of his—the center line of his pants on the inner portion of his left thigh." This satisfies the requirement that the touching be of the "inner thigh" of the person. A1C JW's testimony also adequately demonstrated that the appellant's touching was with the intent to abuse, humiliate, or degrade A1C JW or to arouse or gratify the appellant's own sexual desire. Even after A1C JW asked the appellant to stop wiping the crumbs from A1C JW's lap in a public classroom setting, the appellant placed his hand on A1C JW's inner thigh and remarked, "Just say yes." The appellant's actions toward A1C JW constituted a sexual assault offense under Mil. R. Evid. 413.

Turning to the other aspect of the appellant's contention on the Mil. R. Evid. 413 issue, the military judge found A1C JW's testimony was admissible because the acts described were similar to those committed against both victims in the charged offenses.

She stressed the following similarities between the events: 1) they were done with surprise or shock in a public forum likely to intend to harass or humiliate the victim; 2) they were seemingly done without the consent of the other parties; and 3) the appellant took these actions toward young classmates and/or acquaintances he did not know well. The link between the appellant's actions toward A1C JW and the victims in the charged offenses was sufficient to warrant the admissibility of this evidence. As with the charged offenses, the appellant inappropriately touched A1C JW, a person he did not know well, in a public setting during a training program without that person's consent. The actions all took place within months of each other. As with the charged offenses, the contact with A1C JW was relatively brief and unseemly. This satisfies the requirement of Mil. R. Evid. 413 that the evidence be relevant to the charged offenses.

In addition to the matters discussed above, we note A1C JW's testimony was admissible under a Mil. R. Evid. 403 balancing test. The military judge thoroughly analyzed this issue using the factors outlined in *United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000). We need not repeat her analysis here except to state that the *Wright* factors strongly weigh in favor of admitting this evidence. We find no abuse of discretion in the military judge's decision to permit the Government to introduce this evidence.

*Staff Judge Advocate's Recommendation*

The appellant alleges he was prejudiced because the addendum to the staff judge advocate's recommendation (SJAR) failed to address the legal errors raised in the defense clemency submission. The Government argues the staff judge advocate adequately addressed the allegations of legal error by generally stating that the conviction was legally sufficient and the sentence was appropriate.

Proper completion of post-trial processing is a question of law which this Court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Trial defense counsel's clemency submission explicitly alleged several legal errors were committed in trial proceedings. Rule for Courts-Martial (R.C.M.) 1106(d)(4) requires the staff judge advocate to state whether corrective action on the findings or sentence should be taken when an allegation of legal error is raised in a clemency submission. The rule states, however, that "[a]n analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required." *Id.*

We find the staff judge advocate erred by failing to comply with R.C.M. 1106(d)(4). The language the Government cites does not meet the rule's requirement because it came in the SJAR, before the clemency submission, rather than in the SJAR addendum. The rule also requires the SJAR addendum to respond to the

allegations of legal error, at least by "a statement of agreement or disagreement with the matter raised by the accused." *Id.* The SJAR language the Government cites does not agree or disagree with the legal errors the appellant alleged.

However, the fact that the SJA erred in his recommendation addendum does not automatically warrant relief. An error in a post-trial SJAR to the convening authority "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id.*

We do not condone this obvious error by the staff judge advocate. The requirement to respond to legal errors raised by the defense in clemency is well known and easily satisfied. We also recognize the pivotal role the convening authority's action plays in post-trial processing and that it represents the accused's best hope for sentence relief from a court-martial judgment. *United States v. Taylor*, 60 M.J. 190, 194 (C.A.A.F. 2004). Staff judge advocates err in this phase at their peril.

However, we see no reasonable possibility that the staff judge advocate's error prejudiced the appellant under the facts of this case. We have examined the legal errors alleged in the defense's clemency submission (two of which were identical to the issues discussed above), and see no merit in them. The defense's strong clemency package focused on matters apart from the alleged legal errors, and, despite a notable effort to convince the convening authority that clemency was warranted, the convening authority decided otherwise. It is simply not conceivable that the convening authority would have been persuaded to grant clemency by allegations of legal errors that had no merit when several stronger arguments in the clemency package failed to convince the convening authority. The appellant was not prejudiced by the SJA's error, and therefore he is not entitled to relief.

*Post-Trial Processing Delay*

In *United States v. Moreno*, our superior court established guidelines that trigger a presumption of unreasonable delay, including where the record of trial is not docketed with the service court within 30 days of the convening authority's action. 63 M.J. 129, 142 (C.A.A.F. 2006). Furthermore, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers the service appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

The appellant's court-martial concluded on 31 October 2012. The convening authority took action on 28 January 2013. The appellant's case was docketed with this

Court on 22 May 2013, 114 days after action. The appellant does not allege he suffered any prejudice as a result of the delay in docketing the record of trial with this Court. Rather, the appellant asserts *Tardif* relief is warranted due to unreasonable and unexplained post-trial delay.

As we have noted before, the 30-day post-trial processing standard established in *Moreno* is not, by any means, a particularly onerous processing goal. In fact, a delay in this phase of post-trial processing is "the least defensible of all and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). "[T]his stage involves no discretion or judgment; and, unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations." *Id.* There may be valid reasons that justify exceeding the standard for this administrative act, but the Government has offered no such reason and our review of the record finds no good justification for the delay. We note the record contains two corrected copies of the court-martial order to remedy errors in earlier versions. If the Government's errors in completing the court-martial order account for some of the delay in docketing the record, this is certainly not a valid justification.

We have recently warned against delays in this phase of court-martial processing, stating "we offer what should serve as a wake-up call to Government counsel that this is not an issue this Court should once again be required to entertain." *United States v. Milano*, ACM S32122 (A.F. Ct. Crim. App. 11 March 2014) (unpub. op.). We recognize the delay in this case took place before we issued this warning. We also recognize the delay in this matter pales in comparison to the delays incurred prior to the filing of a brief by appellate defense counsel. Nonetheless, another warning simply does not suffice in this case. The significant delay in forwarding the record of trial for appellate review compromises the disciplinary effect of the military justice system and of the appellant's sentence. Exercising our broad authority under Article 66(c), UCMJ, we approve a sentence consisting only of a bad-conduct discharge, confinement for 30 days, and reduction to E-2.

*Conclusion*

The approved findings and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ.

Accordingly, the approved findings and the sentence, as reassessed, are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court