# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.R. MCFARLANE, M.C. HOLIFIELD**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## KELVIN L. ZIMMERMAN
### SERGEANT (E-5), U.S. MARINE CORPS

### NMCCA 201300350
### SPECIAL COURT-MARTIAL

**Sentence Adjudged**: 16 May 2013.
**Military Judge**: LtCol Elizabeth A. Harvey, USMC.
**Convening Authority**: Commanding Officer, 9th Marine Corps District, Western Recruiting Region, Marine Corps Recruit Depot, San Diego, CA.
**Staff Judge Advocate's Recommendation**: LtCol J.E. Ming, USMC.
**For Appellant**: LT Carrie E. Theis, JAGC, USN.
**For Appellee**: LCDR Keith B. Lofland, JAGC, USN; LT Ann E. Dingle, JAGC, USN.

**11 December 2014**

---------------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of three specifications of violating a lawful general order and one specification of making a false official statement, in violation

of Articles 92 and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 907.  The appellant was sentenced to confinement for sixty days, forfeiture of $758.00 pay per month for two months, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the adjudged sentence and except for the bad-conduct discharge, ordered it executed.

On appeal, the appellant contends: (1) that the military judge erred by denying the challenge for cause against Gunnery Sergeant (GySgt) L, a member of the panel; (2) that the evidence adduced at trial was legally and factually insufficient; (3) that the appellant's sentence was inappropriately severe; and, (4) that the Commandant of the Marine Corps (CMC) exerted unlawful command influence (UCI) on the court-martial through a series of lectures known as the "Heritage Briefs."

After carefully considering the parties' pleadings, the appellant's allegations of error, and the record of trial, we conclude that the findings and the sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

While serving as a Marine Corps Recruiter at the Recruiting Substation Peoria, Illinois in the spring of 2012, the appellant developed an inappropriate relationship with two young women whom he was formally recruiting to join the Marine Corps. In his position as a Marine Corps recruiter the appellant met AS. During her recruitment, the appellant overtly discussed subjects of a sexual nature with her and eventually began communicating with her via his personal cell phone.  Over the course of several weeks the appellant had sexual intercourse with AS on multiple occasions and used the recruiting station Government vehicle to transport her to and from their sexual venues.

The appellant also developed an inappropriate relationship with CK while she was still in the process of recruitment.  He began texting her from his personal cell phone and eventually CK sent sexually provocative photographs of herself to him via text message.  The appellant and CK also sent each other sexually explicit text messages.

2

Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.[1]

## Challenge for Cause

In his initial assignment of error (AOE), the appellant avers that the military judge erred by not granting the defense's challenge for cause against GySgt L on the grounds of implied bias.

A panel member may be removed for cause if such removal is in the "interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). This rule applies to both implied and actual bias.[2] Implied bias exists "when most people in the same position as the court member would be prejudiced." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citations omitted). The test to determine substantial doubt about the fairness and impartiality of the trial is evaluated objectively, "through the eyes of the public." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008) (quoting *United States v. Schlamer*, 52 M.J. 80, 92-93 (C.A.A.F. 1999)) (additional citation omitted). "[I]ssues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Strand,* 59 M.J. 455, 458 (C.A.A.F. 2004) (citation and internal quotation marks omitted). Finally, "when there is no actual bias, 'implied bias should be invoked rarely.'" *United States v. Warden*, 51 M.J. 78, 81-82 (C.A.A.F. 1999) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998).

The appellant's argument is two-fold. First, during group *voir dire* of the panel the military judge asked the following question: "[i]f you are selected as a member of the case, can you . . . decide this case solely upon the evidence presented in this court-martial and the law that I instruct you upon?" Record at 69. The military judge asked the members to raise their hands to indicate an affirmative response to the question. GySgt L did not raise his hand which was deemed to be a negative response by the military judge. *Id*. Secondly, after GySgt L

---

[1] Both AS and CK enlisted in the United States Marine Corps and testified at the appellant's trial. At the time of trial AS was a private first class and CK was a lance corporal.

[2] The appellant does not allege and the record does not reflect any actual bias by GySgt L and we will limit our discussion and analysis accordingly.

left a previous assignment as a Marine Corps Recruiter in Costa Mesa, California, he learned that his supervisor at the Recruiting Station was court-martialed for recruiter misconduct similar to that with which the appellant was charged and this somehow tainted his ability to sit fairly and impartially at the appellant's court-martial.

*Voir Dire* Response

Raised for the first time on appeal, we note that the trial defense counsel did not challenge GySgt L based upon his response to the aforementioned question. R.C.M. 912(f)(4) provides, *inter alia*, that ". . . any other ground for a challenge for cause is waived if the party knew or could have discovered by the exercise of diligence the ground for challenge and failed to raise it in a timely manner." Having not raised this issue at trial, we find that the appellant forfeited his right to challenge GySgt L on that basis.

We additionally note that R.C.M. 912(f)(4) allows the military judge, in the absence of a challenge or waiver of a challenge by the parties, to excuse a member "in the interest of justice" where a challenge for cause would lie. After his response to the question above, group *voir dire* continued and GySgt L, in concert with the rest of the members, provided responses which did not give the military judge or either counsel pause for concern as to GySgt L's impartiality or fitness to serve as a member. To the contrary, obviously content with GySgt L's answers to the remainder of the group *voir dire* questions, neither the military judge, the trial counsel, nor the trial defense counsel asked any follow up questions during individual *voir dire* with respect to GySgt L's response to the aforementioned question. After thoroughly reviewing GySgt L's responses during group and individual *voir dire*, we find no basis to support a challenge for cause for actual or implied bias. Accordingly, we find the "interest of justice" did not warrant *sua sponte* excusal of GySgt L by the military judge and that there was no plain error.

Prior Exposure to Alleged Recruiter Misconduct

The appellant next contends that the military judge erred by not granting the trial defense counsel's challenge for cause based on implied bias in that GySgt L indicated during individual *voir dire* that he learned one of his former bosses from when he was on recruiting duty was court-martialed for having "sexual relations" with a poolee. Record at 149. GySgt

4

L indicated that although he had executed permanent change of duty station orders prior to the conclusion of his former boss's case and did not know first-hand the result of the court-martial, he heard that his former boss was kicked out of the Marine Corps and reduced to private. GySgt L further indicated that he did not verify this information and that he heard it "word of mouth". *Id.* at 150. GySgt L also stated during individual *voir dire* that he understood each court-martial was unique, and that he would be able to assess the evidence in this particular court-martial before he came to any conclusion. *Id.* at 150-55.

The trial defense counsel challenged GySgt L for cause based on implied bias and argued:

> [GySgt L has] experience where a former supervisor – he just heard was court-martialed and received a BCD and reduction to E-1. And it sounds like it was at least one allegation similar to [the appellant's]. So he may have in his mind what he thinks is appropriate as a result of a hearing rumor mill – what happens when you get RFCd for poolee misconduct. That's the only – I think that's the only case that he had heard of a court-martial happening. So he may come with that mindset that that's what happens it [sic] you are guilty.

*Id.* at 159.

The appellant now argues that the military judge abused his discretion by denying the challenge for cause against GySgt L based upon the aforementioned information.

Based upon his responses during individual *voir dire*, the military judge denied the challenge for cause against GySgt L. The military put his analysis and conclusions on the record and stated:

> [GySgt L] left the recruiting station before that case was adjudicated. And that he heard that there was a punitive discharge or that he had been kicked out, I think is what he said and reduction to E-1, but he didn't know anything more about it.
>
> The government asked him in follow up whether or not he understood that each case is individual and that he would have to adjudge this one on the facts and the

5

law presented here.  He said, he would.  Based on his conduct in the court and, again, with all of these [other challenges for cause], I do have the liberal grant mandate.

But in testing for both implied and actual bias, I also deny the challenge for cause as to Gunnery Sergeant [L].  I don't – I asked on numerous occasions whether or not there's any sort of set formula or punishment and he said, no, in general *voir dire*.  And there's nothing in individual *voir dire* that made me believe that he ascribed the punishment given to somebody else as some sort or a standard of required punishment for this case, should the case go to sentencing.

*Id.* at 166.

The record reflects that the military judge appropriately understood the liberal grant mandate and, in denying the challenge for cause, stated his analysis and application of law on the record.  "A military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference than one that does not."  *United States v. Clay,* 64 M.J. 274, 277 (C.A.A.F. 2007).  While we review issues of implied bias under a standard less deferential than abuse of discretion, "where the military judge places on the record his analysis and application of law to the facts, deference is surely warranted."  *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002).  After a thorough review of the record, to include the responses offered by GySgt L during group and individual *voir dire*, we too find no evidence of bias -- actual or implied.  Accordingly, we find that the military judge did not abuse his discretion by denying the trial defense counsel's challenge for cause against GySgt L on the theory of implied bias.

### Legal and Factual Sufficiency

In his second AOE, the appellant alleges that the evidence adduced at trial is legally and factually insufficient to support his convictions.

The test for legal sufficiency of the evidence is "'whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt.'"  *United States*

6

*v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses. *Turner,* 25 M.J. at 325.

As to the violations of a lawful general order, there is no dispute that the orders against inappropriate relationships between recruiter and poolee were both in effect and lawful at the time of the appellant's interactions with AS and CK. Additionally, there is little doubt that the appellant had a duty to obey that order as the Noncommissioned Officer in Charge of Recruiting Substation Peoria where both AS and CK were being recruited. The only issue in dispute is whether the appellant actually failed to obey that order.

The Government's case in chief relied primarily on testimony by AS and CK, but was bolstered by additional testimony by AS's mother and uncle, black box evidence from a government vehicle corroborating parts of AS's testimony, appellant's cell phone records, and photographs of text messages between the appellant and AS.

As to the false official statement charge, the appellant was convicted of making a false entry into the Marine Corps Recruiting Information Support System (MCRIS) to the effect that CK had referred SG to the Marine Corps, thereby authorizing her promotion to private first class upon completion of boot camp. There is no dispute that the appellant entered SG into the MCRIS as a referral of CK as his signature was on the document. Testimony from SG indicated that while he knew CK, he was not referred to the Marine Corps by her and that his involvement with Marine Corps in fact predated CK's. Record at 350-53. Testimony from Captain DK, who conducted the investigation into the allegations made against the appellant, indicated that there was no individual listed as referring SG on his Prospective Applicant Card. *Id*. at 388-89. Capt DK's testimony and documentary evidence further indicated that the appellant was CK's recruiter, CK's pool card indicated only one referral, and yet her MCRIS entry indicated SG was also her referral to bring her total to the two required for promotion. *Id*. at 384-86. Finally, testimony from CK - against her own interest - indicated that the appellant had agreed to put SG as a referral for CK if she could bring another recruit up to the minimum

7

physical standard requirement, a task which she accomplished. *Id.* at 310-11.

Given these facts, we have little difficulty finding that the members had a factual basis to find the appellant guilty beyond a reasonable doubt. On balance, and with due regard for the fact that we did not observe the witnesses, we too are convinced of the appellant's guilt beyond a reasonable doubt. We find this assignment of error to be without merit.

## Sentence Appropriateness

In his third AOE, the appellant avers that the sentence adjudged by the members is inappropriately severe. He asks that this court affirm only so much of the sentence that calls for reduction to pay grade E-1 and 60 days' confinement.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy,* 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

After reviewing the entire record and the pleadings by both parties, we find that the sentence is appropriate for this offender and his offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. Any consideration of appellant's requested relief would amount to an act of clemency which is left to the "command prerogative" of the convening authority. *Healy,* 26 M.J. at 396.

## Unlawful Command Influence

In his final assignment of error, the appellant argues that apparent UCI flowing from the CMC's Heritage Brief[3] infected his trial. The appellant alleges that the Commandant's Heritage

---

[3] For a more thorough description of the Heritage Brief, see *United States v. Howell*, No. 201200264, 2014 CCA LEXIS 321, unpublished op. (N.M.Ct.Crim.App. 22 May 2014).

Brief constituted apparent unlawful command influence and as a remedy asks this court to set aside the findings and sentence.[4]

When raised on appeal, the appellant carries the initial burden of showing "some evidence" of (1) facts that, if true, constitute UCI; (2) that the proceedings were unfair; and (3) that the UCI was the cause of the unfairness. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citing *United States v. Richter,* 51 M.J. 213, 224 (C.A.A.F. 1999)). Although this initial threshold may be low, it requires more than "mere allegation or speculation." *Id.* (citing *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

In his appeal, the appellant focuses on the appearance of unlawful influence. Appellant's Brief of 17 Jan 2014 at 18. The test for the appearance of UCI is objective. "We focus upon the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). An appearance of UCI arises "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id.* We review allegations of UCI *de novo*. *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006).

Assuming *arguendo* that the appellant sufficiently raised the issue, we conclude beyond a reasonable doubt that any appearance of UCI was sufficiently ameliorated. During the group *voir dire* of potential panel members, the military judge *sua sponte* asked the members if they had attended any of the speeches the CMC made during the spring of 2012 which became known as the Heritage Brief. Eight of the ten potential members had attended the event in person and one potential member had either read articles about it, seen the video, or had heard comments about it. The military judge asked several follow-up questions to determine what impact, if any, the CMC's comments had upon the potential members. All potential members indicated that they felt no pressure to find the appellant guilty or to give the appellant a particular sentence if he was found guilty of any offense. Evidently satisfied with the responses by the members, the trial defense counsel did not challenge any member for cause due to their exposure to the Heritage Brief comments and did not make a motion for any kind of relief alleging UCI.

---

[4] The appellant does not allege nor do we find any evidence of actual UCI in the record and we therefore limited our discussion and analysis accordingly.

9

After reviewing the entire record, we conclude beyond a reasonable doubt that, assuming the issue was appropriately raised, any appearance of unlawful influence "had no prejudicial impact on the [appellant's] court-martial." *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010) (citing *United States v. Biagase*, 50 M.J. 143, 150-51 (C.A.A.F. 1999)).

**Conclusion**

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court